UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY MARCUS MAYBERRY,

    Plaintiff,

  v.            CAUSE NO. 3:22-CV-77 DRL-MGG

DEWYER *et al.*,

    Defendants.

## OPINION AND ORDER

  Timothy Marcus Mayberry, a prisoner without a lawyer, filed a complaint and a motion for a temporary restraining order and preliminary injunction. ECF 2, 4. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

## BACKGROUND

A.  *Mr. Mayberry's Allegations.*

Mr. Mayberry alleges that on November 4, 2021, Case Manager Angle brought him "legal mail" from the United States District Court.[1] ECF 2 ¶ 2. He handed Mr. Mayberry a Form 11984 "Notice and Report of Action Taken on Correspondence," stating that the letter was opened per policy 02-01-103 and asked him to sign it. *Id.* at ¶ 3. Mr. Mayberry said that he noticed a shredder located behind Case Manager Angle and asked about it. He learned that after he signed the form, Case Manager Angle would copy the mail and shred the original. *Id.* ¶ 5. Mr. Mayberry objected to the original being shredded and asked Case Manager Angle under what authority he could shred it. *Id.* at ¶ 6. Case Manager Angle referred him to Policy 02-01-103—the Indiana Department of Correction's written policy on Offender Correspondence. *Id.* at ¶ 7. Mr. Mayberry contested that the policy authorized shredding legal mail and refused to consent; Case Manager Angle did not deliver the mail and took it away. *Id.* at ¶¶ 8-9. Mr. Mayberry alleges that the same thing happened several more times in November 2021 with different prison personnel. *Id.* at ¶¶ 12, 15-20, 25, 32, 35. Mr. Mayberry alleges if he did not consent to the immediate shredding of his legal mail after it was copied, he would not receive the mail. Each time, he requested a grievance to challenge the destruction of the legal mail. Despite his grievances, he alleges his mail was still destroyed.

---

[1] The complaint uses a broader definition of "legal mail" than that courts do when determining which types of prisoner mail get special protection under the Constitution. *See Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005). IDOC is free to offer more protection than the Constitution requires, but violations of prison regulations, alone, do not violate the Constitution.

2

On December 14, 2021, Mr. Mayberry reports that he finally consented to the destruction of the originals on the condition that he be allowed to compare the copies to the originals to ensure they were accurate. ECF 2 ¶ 42. He says Counselor Myers, who was distributing the mail, agreed. *Id.* ¶ 43. She copied the documents in front of him but then did not hand over the originals for comparison. *Id.* ¶¶ 50-51. So, Mr. Mayberry refused to sign the form, though it appears he did receive the copies. *Id.* ¶¶ 51, 55. Mr. Mayberry learned the next day that Deputy Warden Scaife had destroyed the originals. *Id.* ¶ 53.

Mr. Mayberry alleges the prison officials' actions violate his right to due process because his property—the original documents—are destroyed without due process. He also contends this action denies him access to the courts because it prevents him from receiving communication from courts and attorneys, hindering his ability to participate in his cases. Finally, he asserts that it is unlawful retaliation for prison staff not to deliver his legal mail when he requests a grievance to contest the immediate-shredding policy. He asks for monetary damages and a permanent injunction to stop the practice.

B. *Indiana Department of Correction Policies*.

IDOC has a written policy establishing procedures for handling inmate mail: Policy and Administrative Procedure 02-01-103, Offender Correspondence ("Correspondence Policy"), effective date Mar. 15, 2021, available at https://www.in.gov/idoc/files/02-01-103-Off-Corr-3-15-2021.pdf (last visited Feb. 14,

---

*See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations").

2022). That policy divides mail into three categories: General Correspondence ("Any letter, package, or printed matter not marked as privileged or legal mail . . .."), Legal Correspondence ("Correspondence mailed directly from or to a court, a judge, or an attorney . . ., and which has been identified as legal mail."), and Privileged Correspondence ("Correspondence mailed directly to or from any of the following persons in their respective official capacities: local, state and federal officials . . .."). *Id.* at 2-3. The Policy details how each type of mail, both incoming and outgoing, is to be processed at IDOC facilities. Mr. Mayberry only objects to the treatment of his incoming legal mail.

General correspondence is already subject to being copied, and the originals are destroyed. Under the current policy, general correspondence is opened and copied in the mail room, and the copies are distributed to offenders. Correspondence Policy at 11. The originals are kept for 14 days, allowing time for the offender to notify staff if their copy is inadequate and to elect to mail back, at their own cost, any original photographs or art received. *Id.* at 11-12. Legal mail, however, undergoes a visual inspection in the mail room, but the mail is opened only in the presence of the offender. *Id.* at 8. Prison staff opens the mail to check for unauthorized items and then gives the original to the offender. *Id.*

However, the policy notes that several facilities are participating in pilot programs for new ways of processing legal mail, one of which consists of copying the legal mail and shredding the original. Correspondence Policy at 9. The details of that program are described in Executive Directive # 20-30 ("Executive Directive"), effective date June 16,

2020, *available at* https://www.in.gov/idoc/files/ED-20-30-Offender-Correspondence-6-16-2020.pdf (last visited Feb. 14, 2020). Under that program, legal mail is opened in the presence of an offender and "an on-site designated copier shall be used to make the offender an accurate, legible copy of the Legal Mail or Privileged Correspondence. The offender must be present for the copying." *Id.* at 4. To receive the copy, the offender must sign a State Form 11984, acknowledging that they received an accurate copy of the mail. Finally, "[t]he original mail shall be shredded in the presence of the offender." *Id.* There is no provision to grieve an inadequate copy or mail the original to someone outside the facility.

ANALYSIS

    A.    *Due Process*.

Mr. Mayberry's claim that the original version of his legal mail is destroyed without due process fails because he does not have a property interest in the original documents. "Although the Fourteenth Amendment protects property rights, it does not create them. Instead, property rights 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509-10 (7th Cir. 2013) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). And here, the Indiana General Assembly has given the IDOC Commissioner the authority to adopt departmental rules. *See* Ind. Code § 11-8-2-5(b)(1). These rules circumscribe an inmate's property rights because "[l]awful imprisonment necessarily makes unavailable many

5

rights and privileges of the ordinary citizen, a retraction justified by the considerations underlying our penal system." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974) (quotation marks omitted). This means that valid IDOC regulations can take away rights that unincarcerated people otherwise have.

Here, IDOC policies define the types of property inmates may possess. *See* IDOC Policy and Administrative Procedure 02-01-101, Offender Personal Property ("Property Policy"), effective date Sept. 1, 2021, *available at* https://www.in.gov/idoc/files/02-01-101-Off.-Personal-Property-9-1-2021.pdf (last visited Feb. 14, 2022). "Offenders shall be permitted to maintain only the types of property indicated in the attachments to this policy and administrative procedure, including those limits indicated in a facility's operational procedures." *Id.* at 4. Anything not "specifically permitted" is prohibited. *Id.* at 3. Inmates are specifically permitted to possess legal materials, but the definition of legal materials does not specify whether the allowed legal materials include originals:

> LEGAL MATERIALS: Pleadings, complaints, petitions, motions, briefs, exhibits, Department policies and procedures, affidavits, transcripts, expert reports; correspondence to and from attorneys or persons employed by an attorney in a legal capacity; correspondence to or from courts or expert witnesses; copies of case law; notices of filing or other documents to be filed in a court of law, court of claims, or other forum in which a suit may be filed; documents to be filed in support of clemency petitions; or any other documents which are or may be required to be served upon opposing counsel or parties.

*Id.* The prison has previously established that offenders are not allowed to possess original copies of general correspondence; the new directive adds original legal mail to that category of prohibited items.

6

IDOC has determined that an offender may not possess original legal mail, only copies. Based on this, Mr. Mayberry cannot show a property interest in the originals. *See Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (concluding inmate had no property interest in money order mailed to him in violation of valid prison regulation); *Harris v. Forsyth*, 735 F.2d 1235, 1236 (11th Cir. 1984) (concluding inmate had no property interest in cash because prison rules forbade possession of cash); *Lyon v. Farrier*, 730 F.2d 525, 527 (8th Cir. 1984) ("Because the property was contraband, [the inmate] cannot seriously argue that he had a protected property interest in it."); *see also Bilida v. McCleod*, 211 F.3d 166, 173 (1st Cir. 2000) ("[A] claimant has no property interest in 'per se contraband,' *i.e.*, something that is illegal merely to possess."). Therefore, the prison need not provide due process before shredding the original legal mail.

B.     *Access to the Courts.*

Mr. Mayberry also asserts that the prison mail policy denies him access to the courts. Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color of law) hindered the inmate's efforts to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), and that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the

7

courts); *see also* Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2017). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Thus, to state a claim, Mr. Mayberry must connect the denial of access to his original legal mail with resulting prejudice to a potentially meritorious legal claim.

Here, Mr. Mayberry has not alleged the lack of an original document prejudiced a potentially meritorious legal claim. Mr. Mayberry identified only two specific lawsuits in his complaint but does not describe any prejudice to either. First, Mr. Mayberry alludes to a lawsuit when he says, "I noticed that my legal mail from the Elkhart City Police Department (for an active lawsuit) was already opened." ECF 2 at ¶ 43. But he otherwise provides no information about that lawsuit or any potential prejudice. Second, Mr. Mayberry states, "My last CM/ECF for Cause No. 3:19-cv-00556-PPS-MGG, shows that my action is closed and I have no idea why." *Id.* at ¶ 67. This allegation cannot show the necessary prejudice because that case, *Mayberry v. Olmstead*, No. 3:19-cv-556-PPS-MGG (N.D. Ind. filed July 19, 2019), was stayed at Mr. Mayberry's request and statistically closed pending further court order. The lack of an original document has not prejudiced him in that case either.

C. *Grievances.*

Finally, Mr. Mayberry contends that he is being retaliated against for filing grievances because after he refuses to consent to the legal mail's destruction and asks for a grievance form, his legal mail is destroyed. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quotation marks omitted). Here, the claim fails on the third prong. It is clear that the guards are not destroying the mail in retaliation but rather because he refused delivery.

Prison officials may insist that an inmate follow procedure in order to receive services. *See Rodriguez v. Briley*, 403 F.3d 952, 952-53 (7th Cir. 2005) ("[D]eliberate noncompliance with a valid rule does not convert the consequences that flow automatically from that noncompliance into punishment."); *Cherry v. Berge*, 98 F. App'x 513, 515 (7th Cir. 2004) (holding that defendants were not deliberately indifferent for withholding medication because prisoner's noncompliance with medication protocol was considered a refusal). Here, prison policy dictates that to receive legal mail, an inmate must verify he receives a legible copy and consent to the original's destruction. Refusing to follow this policy is the same as refusing delivery of the mail. Thus, the mail is destroyed not in retaliation but because it was refused.

TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Mr. Mayberry also moves for a temporary restraining order and preliminary injunction, asking the court to enjoin defendants from (1) denying him legal mail in retaliation for filing grievances; (2) copying legal documents that contain raised seals, wet-ink signatures, or any other authenticating marker and (3) denying or delaying incoming or outgoing legal mail. ECF 4. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because the complaint does not currently state a claim, Mr. Mayberry has no chance of success on the merits.

This complaint does not state a claim for which relief can be granted. Nevertheless, Mr. Mayberry may file an amended complaint if he believes he can state a claim based on (and consistent with) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **<u>Pro Se 14 (INND Rev. 2/20) Prisoner Complaint</u>** form which is available from his law library. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) DENIES the motion for temporary restraining order and preliminary injunction (ECF 4);

(2) GRANTS Timothy Marcus Mayberry until **March 21, 2022**, to file an amended complaint; and

(3) CAUTIONS Timothy Marcus Mayberry if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

February 17, 2022                                         *s/ Damon R. Leichty*
                                                                           Judge, United States District Court